UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60311-CIV-COHN

SONEET R. KAPILA, as Trustee of the
Bankruptcy Estate of Elon Dromi,

Magistrate Judge Snow

    Plaintiff,

vs.

ALLSTATE INSURANCE COMPANY,
a foreign corporation,

    Defendant.
_____/

**<u>ORDER DENYING ALLSTATE'S MOTION FOR SUMMARY JUDGMENT</u>**
**<u>ORDER RESCHEDULING CALENDAR CALL FOR DECEMBER 7 AT 3:00PM</u>**
**<u>ORDER DIRECTING EXPEDITED RESPONSE REGARDING RULE 16.1(J) MEMO</u>**

THIS CAUSE is before the Court upon Allstate's Motion for Summary Judgment [DE 30], Allstate's Request for Judicial Notice [DE 31], and Plaintiff's Motion to Strike Allstate's Reply [DE 57]. The Court has carefully considered the motions and is otherwise fully advised in the premises. This motion became ripe with the filing of the reply memorandum on November 24, 2006.

## I. BACKGROUND

Plaintiff Soneet Kapila ("Plaintiff" or "Trustee"), the trustee for the bankruptcy estate of Elon Dromi, filed this action for bad faith breach of contract against Defendant, Allstate Insurance Company. Elon Dromi, an additional insured on the insurance policy of his father, David Dromi, was involved in an auto accident resulting in the death of William Bradshaw on May 15, 1999. Elon Dromi was driving a truck that he co-owned with his mother, Carolyn Dromi.

William Bradshaw's estate sued the Dromis in Broward County Circuit Court,

obtaining a judgment against Elon Dromi and Carolyn Dromi for $1,219,192.70 in compensatory damages. An additional special judgment was also entered against Elon Dromi for $75,000 in punitive damages. Both judgments were dated December 27, 2001.

Just prior to entry of judgment, Elon Dromi filed for bankruptcy on December 17, 2001, listing the Bradshaw estate's claim against him as a debt. On April 1, 2002, Elon Dromi was discharged in bankruptcy, including as debts the judgments entered in favor of the Bradshaw estate.[1] The Bradshaw's attorney, Wayne Koppel, Esq., was appointed as a special co-counsel for the bankruptcy trustee. The Trustee Plaintiff in this case seeks damages in the amount of the excess judgment of $1,279,192.70, plus interest at the rate of 10% per year from December 27, 2001, along with attorney's fees and costs.

The Dromis' insurance policy with Allstate had a policy limit of $15,000 per person for bodily injury coverage. Allstate provided the Dromis with coverage during the pre-suit negotiation and underlying civil case brought by the Bradshaw estate against the Dromis. The central dispute in this case centers upon whether Allstate's handling of the settlement of the Bradshaw estate's claim amounts to a bad faith breach of the insurance contract. Defendant asserts that it timely offered the policy limits to the Bradshaw's attorney in exchange for a complete release of Elon Dromi, and his parents, Carolyn Dromi and David Dromi. This attempt failed, as the Bradshaws refused to release the parents, though the Bradshaws did offer to release Elon for the

---

[1] His mother, Carolyn Dromi, did not file for bankruptcy.

$15,000 policy limit.  Plaintiff asserts that it was completely unreasonable, amounting to bad faith, for Allstate to insist on a complete release of all three Dromis, rather than taking the release of Elon for the $15,000 limit.  Plaintiff argues Allstate's decision left Elon on the hook for the entire amount of the excess judgment, when he could have been spared that result.

Allstate has moved for summary judgment on Plaintiff's bad faith claim.  Plaintiff opposes the motion.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S.

at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. at 249-50.

### B.  Factual Background

Three days after the fatal crash in May, 1999, Allstate offered the $15,000 policy limits to Kelly Bradshaw, the widow of William Bradshaw.  This offer was rejected.  The next day, Allstate told David Dromi by telephone and in writing that at that time that

Allstate had offered the policy limits, that the offer had not been accepted at that time, that he may want to get his own lawyer given the seriousness of the accident. Two months later, Allstate renewed its offer to settle for the policy limits. On August 18, 1999, Wayne Koppel responded on behalf of Kelly Bradshaw by offering to release Elon Dromi only, in exchange for payment of the $15,000 policy limit by close of business on August 30, 1999. At that time, Koppel believed that the vehicle driven by Elon was owned by both Carolyn and David Dromi.[2]

On August 23, 1999, Allstate forwarded Koppel's demand letter to the Dromis and encouraged them to engage personal counsel. (Deposition of Robert Sirianni, Exhibit 4 to Defendant's Notice of Filing Depositions [DE 32], hereinafter, "Defendant's Notice of Filing"). The next day, after consulting with Allstate's counsel, Allstate's adjuster, Robert Sirianni, spoke with David Dromi and advised him that Allstate would pay for an attorney for Mr. and Mrs. Dromi, and a separate attorney for Elon Dromi for them to decide whether to exhaust the policy limits for a release of Elon only. Id. According to Sirianni's testimony, the following took place: 1) David Dromi contacted Mr. Sirianni the same day and advised him that the Dromi family had retained attorney Sheldon Slatkin, a bankruptcy attorney, to represent them in determining how to respond to the demand letter; 2) after advising Slatkin about the demand letter, Slatkin met with the Dromis on August 25, 1999; 3) following this meeting, Sirianni spoke with Mr. Slatkin on August 25, 27 and 30; 4) each time Slatkin advised Sirianni that he was

---

[2] After filing of the state court lawsuit by Kelly Bradshaw, Koppel learned that the vehicle was owned by Elon and his mother, Carolyn, and not by David Dromi, the father. David Dromi was then dismissed from the lawsuit.

waiting for more information from the Dromi family; 5) later in the day on August 30, 1999, the day of the deadline, Slatkin advised Sirianni that Allstate should tender the policy limits and send a release including all three Dromis, which Sirianni then delivered to Koppel; and 6) Koppel did not respond until he filed the underlying civil law suit on November 30, 1999.  Plaintiff's interpretation of Allstate's claim file is that Slatkin "acquiesced in Allstate's decision to make a third offer to pay the policy limits in return for the release of all insureds." (Plaintiff's Statement of Material Facts, ¶ 18 [DE 42]).[3]  As noted in the Background section of this Order, the lawsuit led to an excess judgment against Elon and his mother, Carolyn.

An additional factual dispute concerns communications, or the lack thereof, between Allstate and Elon Dromi.  At the time of the accident, Elon Dromi was 19 years old and lived with his parents.  He had no discernible assets, while the Bradshaw's counsel's investigation revealed that his parents did possess collectible assets. (Deposition of Wayne Koppel at 32-33, 47, Exhibit 3 to Defendant's Notice of Filing Depositions).  Allstate kept in contact with only Elon's father, David Dromi, as Allstate believed this was in accordance with the Dromi family wishes.  Plaintiff presents evidence that Elon wanted to be personally kept informed and consulted during the underlying litigation with the Bradshaws.  Elon testified in his deposition that he never saw the August 18, 1999 letter from Wayne Koppel offering to release Elon in return for

---

[3] This interpretation is based upon the Allstate adjustor's notes from August 31, 1999, in which Mr. Sirianni wrote that "He [Slatkin] had no objection of me preparing ck. w/all three insd's on the release. . . ."  (Allstate Claim File Document No. 010076, Plaintiff's Notice of Filing Documents, p. 18 of 26, Attachment 3 to Plaintiff's Response to Defendant's Motion for Summary Judgment [DE 42].)

6

payment of the policy limits, though he recalled that his mother told him about the letter. (Deposition of Elon Dromi at 8-9, Exhibit 1 to Defendant's Notice of Filing). Elon also testified that he was not informed that Allstate offered to hire an attorney just for Elon, separate from his parents, to decide whether to accept that offer. Id. at 10.

Mr. Slatkin, the attorney retained by David Dromi, died on August 10, 2005, and his professional association takes the position that he only represented David and Carolyn Dromi. Elon does not recall whether Mr. Slatkin represented him in deciding whether to accept the Bradshaw's offer to release him. The parties have different interpretations about whether Mr. Slatkin represented the interests of Elon Dromi, in addition to those of Carolyn and David Dromi.

### C.  Bad Faith Standard

Turning to the legal standards that govern this dispute, in the seminal case stating the standard for a bad faith claim against an insurance company, the Florida Supreme Court stated:

> For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith. The question of failure to act in good faith with due regard for the interests of the insured is for the jury.

Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla. 1980) (internal citations omitted).

In 1995, the Florida Supreme Court adopted five factors to determine whether an insurer has acted fairly and honestly toward its insured:

> (1) whether the insurer was able to obtain a reservation of the right to deny coverage if a defense were provided; (2) efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; (3) the substance of the coverage dispute or the weight of legal authority on the coverage issue; (4) the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage; and (5) efforts made by the insurer to settle the liability claim in the face of the coverage dispute.

State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 63 (Fla.,1995); Pozzi Window Co. v. Auto-Owners Ins., 446 F.3d 1178, 1188-89 (11th Cir. 2006).

The standard jury instructions for an insurer's bad faith failure to settle direct the jury to consider whether "under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured with due regard for their interests."  Standard Jury Instructions in Civil Cases, MI 3.1, 840 So.2d 1083, 1084 (Fla. 2003).[4]

In applying the five factors discussed by the Florida Supreme Court in Laforet,

---

[4] Allstate cites a federal case for the quote that: "simple negligence cannot be enough to establish bad faith." American Bankers Ins. Co. of Florida v. Northwestern Nat. Ins. Co., 198 F.3d 1332, 1336 (11th Cir. 1999).  However, this quotation was made in the context of the "follows the fortunes" doctrine in disputes between insurers and their reinsurance companies. 198 F.3d at 1335-36.  The relevance of this decision to the case at bar is not readily apparent, other than use of the term "bad faith" in an insurance context.

the determinative factor in this case, given the absence of a coverage dispute,[5] are the efforts made by Allstate to settle the liability claim. Allstate argues that it offered the policy limits three days after being advised of the potential claim and communicated that offer to the Dromis. However, as discussed above, there is a dispute of fact as to whether Allstate communicated at all with Elon and whether Elon had agreed to have his father be the recipient of all communications from Allstate. Plaintiff argues that Allstate violated the standard of Boston Old Colony because Allstate should have tendered the policy limits and obtained a release of Elon, particularly after the Bradshaws rejected Allstate's offer of the policy limits for a release of all three Dromis. Rather than insisting upon an unreasonable release of all three Dromis in return for $15,000, Plaintiff asserts that Allstate should have spared Elon liability for the excess judgment that was reasonably foreseeable given the death of William Bradshaw. Plaintiff argues that Allstate did not take this action because it was feared being sued for bad faith by Carolyn and/or David Dromi. (Deposition of David De Armas at 103-104, Plaintiff's Notice of Filing Documents, Attachment 12-13 to Plaintiff's Response to Defendant's Motion for Summary Judgment [DE 42].)

     Defendant argues that it has complied with Boston Old Colony and Laforet because it did all that it could with the low policy limits and the high likelihood of a large award. In addition to offering the policy limits three days after the accident, Allstate gave the Dromis the opportunity to hire separate counsel to assist them in deciding

---

[5] There is reference in the record that Allstate had to provide a defense to the Dromis even after the policy limits were exhausted.

whether to accept the offer of releasing only Elon for the policy limits. Allstate's position is that it relied upon the advice of Mr. Slatkin in attempting to counter offer the Bradshaw's August 18, 1999 offer of releasing Elon by tendering the policy limits and seeking a full release.

In its reply memorandum, Allstate frames the key issue as whether it had any legal duty to settle the claim against Elon while leaving his mother, Carolyn Dromi, unprotected to the remainder of the claims. Allstate asserts that under U.S. Security Ins. Co. v. Contreras,[6] 927 So.2d 14 (Fla. Dist. Ct. App. 2006), it fulfilled its duty of attempting to settle the claims as to all of its insureds. The Fourth District Court of Appeal's decision in Contreras presents a similar issue to the case at bar, with some important differences. Similar to the present case, an additional insured drove a vehicle and killed another person. Faced with low policy limits and high potential damages, the insurance company attempted to settle as to both the driver and the vehicle owner. Such attempt was rejected, but the plaintiff countered the offer by agreeing to release the vicariously liable vehicle owner in exchange for the policy limits. The insurance company rejected that offer, stating that it had a duty to both insureds and could not just release one insured. Plaintiff then filed suit against both defendants. The trial court granted a directed verdict in favor of the insurance company, but the Fourth District reversed, relying on the Boston Old Colony standard.

---

[6] This case was discussed in the initial motion and Plaintiff's response. In the initial motion, Allstate appeared to assert the Contreras decision represented a separate basis for summary judgment, rather than merged into the Boston Old Colony analysis.

The Court held that though the insurance company had fulfilled its duty to protect the driver (though it failed), the insurance company "was obligated to take the necessary steps before [plaintiff's] offer expired to protect [named insured] from what was certain to be a judgment far in excess of her policy limits."  927 So.2d at 21.

Though there are important factual distinctions between <u>Contreras</u> and the present case, those differences do not affect the result.  Allstate points out that the insurance policy in <u>Contreras</u> provided that the carrier's duty to defend ended when the policy limits were exhausted; that Contreras was willing to release the vicariously liable party, not the grossly negligent tortfeasor, as in this case; that in <u>Contreras</u>, the plaintiffs reiterated that they would never release the negligent driver, whereas in the present case, the Bradshaws refused to release the vicariously liable party because of a large disparity in collectible assets; and that the Bradshaws filed suit in response to Allstate's "request" to release both insureds, giving Allstate no chance to further attempt to resolve the claim.  As discussed below, these factual differences do not eliminate all questions of fact as to whether Allstate, under the totality of the circumstances, fulfilled its obligation to protect each of its insureds.

### D.  Standard as to Dischargeability

A separate argument made by Allstate concerns whether the bankruptcy trustee has standing to pursue this claim because the debt should not have been discharged. Allstate argues that because the Amended Complaint in the underlying case mentioned that Elon Dromi allegedly was under the influence of Ecstasy at the time of the accident, that alone supports a claim of non-dischargeability under 11 U.S.C. § 523(a)(9).

Allstate concedes that the trial court did not admit evidence of intoxication.

More importantly, the issue of whether the debt is dischargeable is properly considered by the bankruptcy court or in the context of an appeal of such proceeding. Allstate does not have standing to now attack the decisions of the bankruptcy court.

### E.  Conclusion as to Summary Judgment

The Court recognizes that although the question of "bad faith" normally is a question for the jury, if there are no material facts in dispute, the Court has the authority to issue a summary judgment on behalf of an insurer.  <u>Berges v. Infinity Ins. Co.</u>, 896 So.2d 665, 680 (Fla. 2004).  However, upon review of the record before the Court in this action, the Court concludes that there are questions of fact that preclude such a ruling as a matter of law.  For example, was it Sheldon Slatkin's proposal to counter offer a full release of all three insureds (though a full release had been previously offered and not accepted) in response to the Bradshaw's offer to just release Elon?  Or was it Allstate's adjuster's idea?  Did Sheldon Slatkin also represent Elon at that time?[7]  Was Allstate justified in communicating solely through David Dromi?

The answers to these factual questions are in dispute and necessarily entail a reasonableness standard for the trier of fact to decide.  Therefore, the Court cannot grant the motion for summary judgment on the record before the Court.

---

[7] The Court recognizes that due to Mr. Slatkin's death, his testimony is unavailable, making these fact determinations difficult for the trier of fact.

III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Allstate's Request for Judicial Notice [DE 31] is hereby **GRANTED**;

2. Allstate's Motion for Summary Judgment [DE 30] is hereby **DENIED**;

3. Plaintiff's Motion to Strike Allstate's Reply [DE 57] is hereby **DENIED**, as three additional days are allowed for mailing time, despite service by electronic means;

4. Allstate shall file an expedited response to Plaintiff's Motion to Strike Allstate's Memorandum of Law filed pursuant to Local Rule 16.1(J) by Thursday, November 30, 2006.  That memorandum does not appear to raise any issues not already briefed at length in Allstate's prior memorandums of law.

5. The Calendar Call for this case is hereby reset for Thursday, December 7, 2006 at 3:15pm.  The Court will hear argument on the pending motions in limine at that time;

6. The parties shall file opposition memorandum to the pending motions in limine by 4:00pm on Friday, December 1, 2006.  If a party does not oppose a motion in limine, then in lieu of an opposition memorandum, a notice of non-opposition shall be filed.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of November, 2006.

JAMES I. COHN
United States District Judge

copies to:    counsel of record

13